LJW/COG: USAO#2021R00214



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ETHAN GLOVER,** <br><br> Defendant | Criminal No.  CCB-21-0089 <br><br> (Theft of Government Property, 18 U.S.C. § 641; False Statements to Federal Law Enforcement, 18 U.S.C. § 1001; Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |

### SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges that at all times relevant to this indictment:

### COUNT ONE
### (Theft of Government Property)

#### Introduction

1. The Baltimore Police Department ("BPD") was an agency of the State of Maryland whose law enforcement jurisdiction includes Maryland's largest city, Baltimore.

2. Sworn members of the BPD must abide by the Law Enforcement Officer's Code of Ethics, which provides, in pertinent part:

   > As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation; the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department … I recognize the badge of my office as a symbol of public faith and I accept it as a public trust to be held so long as I am true to the ethics of police service.

3. ETHAN GLOVER ("GLOVER") joined the BPD on February 19, 2003.

4. In 2013, GLOVER became a federal task force officer (TFO) with the United States Drug Enforcement Administration (DEA).

**April 8, 2016 Seizure**

5. In 2016, GLOVER was a member of DEA Group 51.

6. On April 8, 2016, GLOVER, participated in the execution of a search warrant on John Avenue in Baltimore, Maryland, as a member of DEA Group 51.

7. In the basement of the house three (3) duffel bags were found containing large amounts of cash.

8. On the dining room table, a hand-written document with currency totals was recovered. The document recorded that there was $2,428,900 in cash in the house.

9. GLOVER transported the cash from the residence on John Avenue to another location where a search warrant had been executed and ultimately to the DEA Baltimore Office, alone in his vehicle the entire time.

10. During the course of the ride from John Avenue to the DEA Baltimore Office, GLOVER stole a portion of the cash seized at John Avenue.

11. Ultimately, GLOVER brought the money seized at John Avenue to a professional counting service because it was such a large amount. The amount, inclusive of any suspected counterfeit bills, was found to be $2,419,125 in other words, $9,775, less than what was actually seized at John Avenue, according to the handwritten document recovered at John Avenue.

12. After the execution of the search warrant, GLOVER went to his then-girlfriend's apartment with what GLOVER described to her as $10,000 in cash in individual bundles or stacks. GLOVER hid the $10,000 in her bathroom. GLOVER further explained that while he was driving the cash from the search warrant site, he was followed by another

TFO. GLOVER also told his then-girlfriend that the money came from a "big case" that had been in the news. Approximately one week later, GLOVER moved the money from his then-girlfriend's apartment to his home. During conversations about this money, GLOVER explained to her that he had been called to assist with a large volume money seizure and that while he was driving the money from the location where it was seized, he stole $10,000.

13. TFO C. had in fact followed GLOVER when he transported the seized funds from John Avenue to the Baltimore DEA Office.

14. After the execution of the search warrant, GLOVER kept an official document recording the money he had turned in for counting at his home. The document was later recovered from GLOVER's home in 2020.

15. On April 23, 2016, GLOVER used some of the cash he had stolen from John Avenue to buy his then-girlfriend, in whose apartment he had hidden the money, a pair of shoes worth $295 at Neiman Marcus at the King of Prussia Mall in King of Prussia, Pennsylvania.

16. In June 2016, GLOVER's then-girlfriend moved into his home and saw a large sum of cash hidden behind GLOVER's refrigerator.

### The Charge

17. On or about the 8th day of April, 2016, in the District of Maryland, the defendant,

**ETHAN GLOVER**

willfully and knowingly did steal and purloin cash seized in the execution of a search warrant on John Avenue, of a value exceeding $1,000, of the goods and property of the United States.

18 U.S.C. § 641.

## COUNT TWO
### (False Statement to Federal Law Enforcement)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs one through 16 of Count One are realleged and incorporated herein.

2. On March 1, 2017, seven members of the BPD's Gun Trace Task Force were arrested on federal racketeering charges, including W.J. Following the filing of charges, the FBI continued to investigate misconduct by members of the BPD.

3. On February 28, 2020, GLOVER agreed to participate in a voluntary interview with the FBI. As a DEA TFO, GLOVER knew it was a crime to make false statements during a voluntary interview with federal law enforcement. Further, at the beginning of this particular interview, GLOVER was told it was a crime to lie to the FBI TFOs interviewing him and he acknowledged that he understood.

4. The FBI TFOs questioned GLOVER about a seizure that had occurred with W.J., the officer-in-charge of the GTTF. GLOVER asked the interviewing TFOs how much money the arrestee "is saying is missing? Is it money or drugs? How much did he say he had? A million?" or words to that effect. GLOVER told investigators that he did not witness any officer steal money during this particular seizure. GLOVER told investigators that he did not steal money from this particular seizure or any other case. GLOVER then told the interviewing agents, "I've never stolen anything in my life. Never money or drugs."

### August 2018 Informant Payment

5. In August of 2018, WITNESS 1 contacted GLOVER with information about a vehicular homicide that occurred in Baltimore City, Maryland. The information that WITNESS 1 provided to GLOVER assisted in the investigation of the vehicular homicide.

6. In August of 2018, GLOVER offered to provide WITNESS 1 with monetary compensation for the information he provided for the vehicular homicide.

7. In August of 2018, GLOVER contacted WITNESS 1 and asked him to meet him at the Drug Enforcement Administration, Baltimore District Office ("BDO").

8. When WITNESS 1 arrived to the BDO, he met with GLOVER and "CC." WITNESS 1 signed paperwork provided to him by GLOVER and CC and received $1,000 for the information he provided for the "Vehicular Homicide".

9. The $1,000 that GLOVER and CC gave to WITNESS 1 came from the Baltimore Police Department Fiscal Section. The BPD Fiscal Section receives its funds from the City of Baltimore.

10. After the meeting, WITNESS 1 decided that he did not want to be an informant for the BPD and wanted to return the money to GLOVER.

11. On or about August 15, 2018, WITNESS 1 contacted GLOVER and asked to meet with him. GLOVER and WITNESS 1 met in a parking lot and WITNESS 1 returned the $1,000 to GLOVER.

12. GLOVER kept the $1,000 for himself and did not return it to the BPD.

## The Charge

13. On or about February 28, 2020, in the District of Maryland, the defendant,

**ETHAN GLOVER,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by denying he had ever stolen any money to the FBI at the FBI's Baltimore Field Office in Woodlawn, Maryland, in the District of Maryland. The statements and representations were false because, as GLOVER then and there knew,

he had stolen approximately $10,000 from funds seized during the execution of a search warrant by DEA Group 51 on April 8, 2016, at John Avenue in Baltimore, Maryland and $1,000 from the City of Baltimore in August 2018.

18 U.S.C. § 1001.

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction under Count One of this Indictment.

2. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense alleged in Count One of this Indictment, the defendant,

## ETHAN GLOVER,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $10,775 in U.S. Currency.

4. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_____
JONATHAN LENZNER
ACTING UNITED STATES ATTORNEY

A TRUE BILL:

_9/30/2021_____
Date

**SIGNATURE REDACTED**

Foreperson